*FOR PUBLICATION*

```
IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
              DIVISION OF ST. CROIX
                APPELLATE DIVISION
```

SYLVESTER HODGE,                )
                                )
                                ) D.C. CRIM. APP. NO. 2007/0010
           Appellant,           ) Re: Sup.Ct.Crim.No. F477/2005
                                )
     v.                         )
                                )
PEOPLE OF THE VIRGIN ISLANDS,   )
                                )
           Appellee,            )
                                ) Consolidated with:
ALI BENJAMIN,                   )
                                )
                                )
           Appellant,           )
                                )
     v.                         ) D.C. Crim. APP. NO. 2006/0019
                                ) Re: Sup.Ct.Crim.No. 478/2005
PEOPLE OF THE VIRGIN ISLANDS,   )
                                )
           Appellee.            )
_____)

On Appeal from the Superior Court of the Virgin Islands

Considered: September 18, 2009
Filed: January 28, 2011

BEFORE:    CURTIS V. GÓMEZ, Chief Judge, District Court of the
           Virgin Islands; RAYMOND L. FINCH, Judge of the District
           Court of the Virgin Islands; and BRENDA J. HOLLAR,
           Judge of the Superior Court of the Virgin Islands,
           sitting by designation.

*Sylvester Hodge & Ali Benjamin v. People of the Virgin Islands*
D.C. Crim. App. No. 2007-010 & D.C. Crim. App. No. 2006-019
Memorandum Opinion
Page 2

**ATTORNEYS:**

**Debra S. Watlington, Esq., TPD**
St. Croix, U.S.V.I.
        Attorney for Appellant, Sylvester Hodge,

**Michael J. Sanford, Esq.**
St. Croix, U.S.V.I.
        Attorney for Appellant, Ali Benjamin,

**Maureen Phelan, Esq., AAG & Richard S. Davis, Esq., AAG**
St. Thomas/St. Croix, U.S.V.I.
        Attorneys for Appellee.

| **Memorandum Opinion** | |
|---|---|

   We are called upon to determine whether the Superior Court committed reversible error when it admitted a challenged witness statement.

**I. FACTUAL AND PROCEDURAL POSTURE**

   On October 29, 2005, Sylvester Hodge ("Appellant" or "Hodge"), and his girlfriend Dion Nesbitt ("Dion"), had an argument at the Aureo Diaz housing community on St. Croix in the U.S. Virgin Islands. The argument escalated, attracting the attention and involvement of more than fifteen friends, family members and neighbors. On one side of the fracas were Hodge and his friend, Ali Benjamin ("Benjamin"). On the other, were Dion's brother, Sean Nesbitt ("Nesbitt"), and Sean's friend, Francisco Rivera ("Rivera").

Eyewitnesses, testified that during the course of the confrontation, Benjamin and Hodge left the argument and Benjamin returned with a firearm. By Nesbitt's account, Hodge encouraged Benjamin as Benjamin waved what appeared to be a firearm in the air. Benjamin then made an unsuccessful attempt to snatch Nesbitt's necklace. Thereafter, Benjamin (with Hodge continuing to encourage him) turned the gun towards Rivera's face and ripped a gold necklace from around Rivera's neck.

Following an investigation, Hodge and Benjamin were charged as co-defendants in a six-count amended information.[1] Four counts applied to Benjamin. Benjamin was charged in count I with robbery in the first degree as a principal, in violation of V.I. Code Ann. tit. 14, § 1862(2) and V.I. Code Ann. tit. 14, § 11(A); count II, possession of a dangerous weapon, or an imitation thereof, to wit: a firearm during the commission of a crime of violence, in violation of 14 V.I.C. § 2253(a)(1)(in connection with the robbery in the first degree charge); count III, attempted robbery in the first degree/principals, in violation of V.I. Code Ann. tit. 14, §§ 331 and 1862(2); and count IV,

---

[1] On November 2, 2005, the People of the Virgin Islands filed its initial criminal information. On April 10, 2006, the information was amended to delete language specifying that Rivera's necklace was a "10 kt diamond cut" gold chain on count I as applied to Benjamin. Count V as it applied to Hodge was amended from robbery, to robbery in the first degree. (Hodge, J.A. 9-12.)

Sylvester Hodge & Ali Benjamin v. People of the Virgin Islands
D.C. Crim. App. No. 2007-010 & D.C. Crim. App. No. 2006-019
Memorandum Opinion
Page 4

possession of a dangerous weapon or an imitation thereof, to wit: a firearm during the commission of a crime of violence, in violation of 2253(a)[2] (in connection with the attempted robbery charge).[3]

Two counts were applicable to Hodge: count V, robbery in the first degree as a principal, for aiding and abetting Benjamin, in violation of V.I. Code Ann. tit. 14, §§ 1862(2) and 11(a); and count VI, possession of a dangerous weapon, to wit: a firearm during the commission of robbery in the first degree, in violation of V.I. Code Ann. tit. 14, § § 331 and 1862(2).

A trial was held from April 10-12, 2006. During the presentation of the Government's case-in-chief and over defense counsels' objection, the Superior Court admitted a document concerning the purported observations of eye-witness Adrian

---

[2] The amended information at count IV reads "possession of a dangerous weapon or an imitation thereof, to wit: a firearm during the commission of a crime of violence" (J.A. 11.) However, the amended information cites the possession of a firearm statute. (Id.) Appellant's brief also notes that Benjamin was charged under 2253(a), the possession of a firearm statute. (Appellant's Brief 1.)

[3] Count II's possession of a dangerous weapon during the commission of crime of violence charge was connected to count I's robbery in the first degree charge. Count IV's possession of a dangerous weapon during the commission of a crime of violence charge was in connection with count III's attempted robbery charge. (J.A. 9-12.)

Santiago. ("Santiago"). At the close of the Government's case-in-chief, the court denied the defendant's motion for a judgment of acquittal, pursuant to Fed. R. Crim P. 29. The defendants did not present any witnesses.

After the close of all evidence, the jury returned a guilty verdict as to counts I, II and IV. However, the court set aside Benjamin's conviction as to count IV, because it was contingent on the predicate offense charged in count III, for which he was acquitted. On June 21, 2006, Benjamin was sentenced to ten years for count I and fifteen years for count II. The trial court ordered the sentences to run concurrently. The jury found Hodge guilty of the lesser included offense of count V, robbery in the third degree. Hodge was acquitted of the remaining chargeand sentenced to a period of ten years' incarceration. The Appellants' timely notice of appeal followed.[4]

## II. JURISDICTION

This Court has jurisdiction to consider final judgments and orders of the Superior Court in criminal cases. Revised Organic

---

[4] On appeal, Benjamin argues that the trial court erred because:(1)the Government failed to prove his specific intent to steal Rivera's gold chain;(2) Santiago's statement was improperly admitted at trial;(3) there was a material variance between the amended information and the evidence adduced at trial;(4) Benjamin's conviction violated the double punishment clause of the Fifth Amendment; and (5) the court relied on incorrect information when sentencing him. Hodge argues that Santiago's statement was improperly admitted and was reversible error.

*Sylvester Hodge & Ali Benjamin v. People of the Virgin Islands*
D.C. Crim. App. No. 2007-010 & D.C. Crim. App. No. 2006-019
Memorandum Opinion
Page 6

Act § 23A, 48 U.S.C. § 1613a;[5] Act 6687 § 4 (2004); Act 6730 § 54 (2005)(amending Act 6687); V.I. Code Ann. tit. 4, § 33 (2006).

## III. STANDARD OF REVIEW

We review trial court decisions to admit or exclude evidence for an abuse of discretion. *See United States v. Versaint*, 849 F.2d 827, 831 (3d Cir. 1988). In reviewing a decision to admit or exclude evidence, this Court must determine whether the trial court error affected a substantial right of the defendant.[6] *Id.* In deciding whether an error is harmless, we must, similarly, determine whether the error affects substantial rights of the defendant.[7] *United States v. Versaint*, 849 F.2d 827, 831 (3d Cir. 1988). The seminal question "'is not whether, in a trial that occurred without the error, a guilty verdict would surely have

---

[5] The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541- 1645 (1994), *reprinted in* V.I.CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 159-60 (1995 & Supp. 2003) (preceding V.I.CODE ANN. tit. 1) ["Revised Organic Act"].

[6] Federal Rule of Criminal Procedure 52(a) states, "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Rule 52(a) is made directly applicable to our review by Rule 7 of the Rules of the Superior Court.

[7] There is no fixed formula for determining whether errors affect "substantial rights," and in the final analysis, judgment in each case must be influenced by conviction resulting from examination of proceedings in their entirety, tempered but not governed in any rigid sense of *stare decisis* by what has been done in similar situations. *Pependrea v United States*, 275 F.2d 325 (Cal.App. 1960).

*Sylvester Hodge & Ali Benjamin v. People of the Virgin Islands*
D.C. Crim. App. No. 2007-010 & D.C. Crim. App. No. 2006-019
Memorandum Opinion
Page 7

been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error.'" *United States v. Korey*, 472 F.3d 89, 96 (3d Cir. 2007)(quoting *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993)); *Jimmy Davis v. Gov't of the V.I.*, 561 F.3d 159, 166 (3d Cir. 2009).

## III. ANALYSIS

### A.   Improperly admitted evidence

At trial, the Government presented a document as the signed statement of eye-witness Adrian Santiago ("Santiago") given to an investigating police officer.[8] Initially, the document was proffered to refresh Santiago's recollection. Later, the Government moved the document into evidence.

The hand-written one-page document contains Santiago's name at the top of the page and describes, in detail: the argument between the parties; the caliber of the gun that Benjamin allegedly used to threatened Nesbitt and Rivera; the circumstances under which Benjamin purportedly "pulled off" Nesbitt's chain; and that throughout the event, Hodge accompanied Benjamin. (Benjamin, J.A. 523.)  During cross-examination, the following discourse transpired between the prosecutor and Santiago.

---

[8] The document was designated as Exhibit 5 for identification purposes.

*Sylvester Hodge & Ali Benjamin v. People of the Virgin Islands*
D.C. Crim. App. No. 2007-010 & D.C. Crim. App. No. 2006-019
Memorandum Opinion
Page 8

```
Q.   Sir, would you please take a look at what's been
     identified as Government's Exhibit No. 5.
A.   (Responding)
Q.   Would you take a look at it. Can you read it?
A.   (No response.)
Q.   Does that refresh your recollections as to what
     happened on that day, October 29, 2005?
A.   Me ain't know.
Q.   You don't know. Let's go through this. Your name
     is Adrian Santiago; right
A.   (Nodding.)
```

(Hodge, J.A. 92.)

. . .

```
Q.   You were asked a series of questions by the
     detective who wrote those questions down and
     wrote down the answers; isn't that correct?
A.   I don't know.
```

(Hodge, J.A. 93.)

. . .

Soon thereafter, defense counsel requested a sidebar. There, the Government moved to admit the document into evidence. Defense countered by challenging the proffered document as inadmissable hearsay. The court reserved its ruling and allowed the Government to resume its questioning.

```
Q.   Mr. Santiago, I show you what has been marked as
     Government's Exhibit No. 5 there (indication). Can
     you read the first question on that document?
A.   (No response.)
Q.   You have to answer, sir. Can you read the first
     question on that document?
A.   (No response.)
Q.   What does it say? . . .
A.   Yeah
Court: What is your answer to the question. Can you read
       the first question on the document before you?
```

*Sylvester Hodge & Ali Benjamin v. People of the Virgin Islands*
D.C. Crim. App. No. 2007-010 & D.C. Crim. App. No. 2006-019
Memorandum Opinion
Page 9

       Q.    I tell he me ain't know nothing, "Bee".

(Hodge, J.A. 99.)

. . .

Counsel and the court's exchange with Santiago continued in this manner.

| | |
|---|---|
| Court: | Okay. Now, the question is can you read the first question on People Exhibit No. 5 Can You? |
| A. | (No Response). |
| Court: | Can you read the first word. |
| A. | Which first word? |
| Court. | Mr. Santiago, this is a Q and there is a word here (indicating). Can you read that word? |
| A. | That's my name. |
| Court: | Can you read the second word of the document? |
| A. | It ask me what happen. |
| Court: | Explain...... |
| A. | What happen to me. |
| Q. | What happen to me. You can read the question. |
| Defense Counsel: | I am sorry, your Honor. I did not hear the witness. |
| Court: | Okay. repeat the question and answer. |
| Court: | Please repeat. What did the question ask? |
| A. | Explain to me what happen. |
| Q. | And did you give an answer? . . . |
| A. | Me ain't know nothing. |

(Hodge, J.A. 100-102.)

. . .

| | |
|---|---|
| Q. | I can't hear you. |
| A. | Me ain't know nothing. |
| Q. | You don't know nothing. |
| Q: | Your honor, the Government renews its motion to admit No. 5 into evidence... |
| Defense: | My objection is the same as stated at the sidebar your honor. |
| Q: | The witness can read your honor... |

    Q:        Witness can read, your Honor. The witness has adopted the statement and signed it. He knew the contents of it. He signed it.

    (At this point both defense counsel objected.)

Court:        It would be admitted.

(Hodge, J.A. 102.)

. . .

Under the Virgin Islands Code, hearsay is "a statement which is made other than by a witness while testifying at the hearing offered to prove the truth of the matter stated . . . ." V.I. Code Ann. tit. 5, § 932; *Gov't v. Greenidge*, 41 V.I. 200, 208 n.5 (D.V.I. App. Div. 1998); *Gov't v. Joseph*, 45 V.I. 15, 24 (V.I. Super. Ct. 2002); *Phillips v. People of the V.I.*, 2009 V.I. Supreme LEXIS 16, at * 24-25 (2009). The contested document is hearsay. It is an out of court statement, that was not made while the witness was testifying, containing a description of the events in question. Although the witness statement in question is hearsay under 5 V.I.C. § 932, it is otherwise admissible as an exception under 5 V.I.C. § 932(1) but for the absence of authenticity required under V.I. Code Ann. tit. 5, § 951.

From the outset, the trial court's decision to admit this hearsay writing was problematic, because the Government's proffer was unclear. In fact, the record is completely silent concerning what the hearsay document was offered to prove. As a result, we are uncertain whether the document was proffered as impeachment

evidence, a statement of identification, prior inconsistent statement, or any other exception or exemption to the hearsay rule.

Proffer problems notwithstanding, the document was improperly admitted, because no witness testified to authenticate the writing or to otherwise verify the threshold reliability of its contents. The V.I. Code governing the admissibility of writings provides in pertinent part that:

> <u>Authentication of a writing is required before it may be received in evidence</u>. Authentication may be by evidence sufficient to sustain a finding of its authenticity or by any other means provided by law.

5 V.I.C. § 951 (emphasis added). Here, the Superior Court made no preliminary authentication findings whatsoever before admitting the document into evidence.

The general exclusion of hearsay is based on concerns of reliability and the lack of opportunity to test such statements through cross examination. In this instance, the document's reliability was not sufficiently tested. Santiago, the purported declarant, refused to qualify the reliability of the document and the Government failed to produce a witness who could competently testify to making the document. Ultimately, the prosecutor's questions to Santiago on direct examination comprised the only

record at all that a police officer recorded Santiago's statement.[9]

Equally disturbing is the absence of testimony indicating that Santiago had the document read to him, understood it or adopted it when it was taken. Santiago testified that he did sign his name on the document.[10] However, when asked by the Prosecutor whether he could read the document, Santiago replied that he could not. Santiago later testified that he could not read at all.[11]

Under the specter of Santiago's illiteracy, the document is not signed by any person other than Santiago. Moreover, the proffered document does not contain a date, time, nor descriptive heading. Thus, there is no indication that the report was taken contemporaneously with the actions it supposedly reported. Yet, the court decided to admit the document.

We recognize the deference afforded to the trial court's discretion to admit or exclude evidence. Here, however, the trial court abused its discretion when it admitted this document.

B. **Harmless error**

Having found a due process violation, we examine whether this

---

[9]   Q. When detective Hassell questioned you about this she asked you to explain what happened. That is correct; isn't it?
      A. Me don't know. (Hodge, J.A. 104.)

[10] (Hodge, J.A. 93.)

[11] (Hodge, J.A. 109.)

*Sylvester Hodge & Ali Benjamin v. People of the Virgin Islands*
D.C. Crim. App. No. 2007-010 & D.C. Crim. App. No. 2006-019
Memorandum Opinion
Page 13

trial error was harmless beyond a reasonable doubt.[12] *See Chapman v. California*, 386 U.S. 18, 24 (1967) (before error can be held harmless, the court must be able to declare a belief that "it was harmless beyond a reasonable doubt"). The seminal question is "whether the guilty verdict actually rendered in this trial was surely unattributable to the error." *Korey*, 472 F.3d at 96.

Under this standard, the reviewing court must satisfy itself that the error, viewed in the context of all the evidence presented, did not contribute to the guilty verdict, undermining confidence in the trial.[13] *See id.; see also Davis*, 561 F.3d at 166. In other words, after thoroughly examining the record, a reviewing court must have "a sure conviction that the error did not prejudice the defendant, but need not disprove every reasonable possibility of prejudice." *United States v. Jannotti*, 729 F.2d 213, 219-20 (3d

---

[12] "Trial error" occurs during the presentation of the case to the jury, and is amenable to harmless-error analysis because it may be quantitatively assessed in the context of other evidence to determine its effect on the trial. *Brecht v. Abrahamson*, 507 U.S. 619 (1993).

[13] The Third Circuit Court of Appeals has held that an error is harmless if the record shows "'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *United States v. Fallon*, 470 F.3d 542, 547 (3d Cir. 2006) (quoting *Chapman v. California*, 386 U.S. 18 (1967)). Errors committed by a trial court in a criminal case are considered harmless if the reviewing court determines that there is a "high probability" that the error did not affect substantial rights. *United States v. Werme*, 939 F.2d 108, 116-17 (3d Cir. 1991).

Cir. 1984); *United States v. Thomas*, 998 F.2d 1202, 1207 (3d Cir. 1993). "[An]otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the . . . error was harmless beyond a reasonable doubt." *Fallon*, 470 F.3d at 547 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986)).

In determining whether the error was harmless, we balance the weight of the improperly admitted documentary evidence against other properly admitted evidence adduced at trial. *See Davis*, 561 F.3d at 166; *see also United States v. Wright-Barker*, 784 F.2d 161, 174 (3d Cir. 1986). A lynchpin determination supporting whether there was a reasonable probability that the error contributed to the jury verdict, is whether all of the evidence, including the corroborating evidence against the defendant was "overwhelming." *Davis*, 561 F.3d at 166-169 (properly admitted, yet biased testimony diminishes the overwhelming evidence against the defendants in harmless-error context).

The Supreme Court has consistently held that constitutional error casts on someone other than the person prejudiced by it a burden to show that it was harmless. *Smith v. United States*, 502 U.S. 1017, 1019 (1991) (prosecution has burden of demonstrating that admission of confession did not contribute to conviction); *Satterwhite*, 486 U.S. at 258-259. Here, given our governing

*Sylvester Hodge & Ali Benjamin v. People of the Virgin Islands*
D.C. Crim. App. No. 2007-010 & D.C. Crim. App. No. 2006-019
Memorandum Opinion
Page 15

standard, the Government has not met its burden. Moreover, the record falls short of reasonably assuring us that the evidentiary error did not contribute to the jury's guilty verdict. *Davis*, 561 F.3d at 168.

The Government's case was built on eye-witness testimony. Nesbitt and Lawrence were the Government's key eyewitnesses. Both Nesbitt and Lawrence provided similar eye-witness accounts. However, the testimony of each suggested, to varying degrees, prior antagonistic relationships with Benjamin. *See Davis*, 561 F.3d at 166 (holding that evidence was not overwhelming, in a harmless-error context, where two eyewitnesses had prior antagonistic relationships with the defendant).

Sean Nesbitt is Dionne Nesbitt's brother. He arrived on the scene to protect his sister from, what he perceived as, a threat from Hodge, and was a catalyst to the fight leading to the alleged incident involving Benjamin. Nesbitt's testimony was corroborated by Ms. Beatrice Lawrence. However, Ms. Lawrence testified that she had several arguments with Benjamin in the past, concerning Benjamin's relationship with her younger sister, Leandra Joseph. (Hodge, J.A. 129.) Ms. Lawrence further conceded, under cross examination, that she was generally unhappy about Benjamin's relationship with Leandra and that she would not have to worry about Benjamin should he be sent to prison. (Hodge, J.A. 130.)

Moreover, other eye-witnesses gave testimony that conflicted with Lawrence and Nesbitt's accounts. Dione, Sean Nesbitt's sister, and Veronica Geriff, Sean's Nesbitt's mother were also at the scene. Ms. Geriff testified that she did not remember seeing Benjamin point a gun at her son. (Hodge, J.A. 24-27.) Dion Nesbitt, who was at the center of the argument contradicted her brother's testimony when she flatly testified that Benjamin and Hodge were not at the scene. (Hodge, J.A. 81, 82.) Further, Santiago testified that he did not know whether he saw the Appellants on the date in question. (Hodge, J.A. 113.) Santiago also testified to not knowing whether Hodge and Benjamin where helping each other when Benjamin allegedly pulled out the .38 caliber handgun and robbed Nesbitt. (J.A. 109.) The conflicting testimony reveals that the evidence against the Appellants was less than overwhelming. *See Gov't of the V.I. v. Martinez*, 620 F.3d 321, 338 (3d Cir. 2010)(evaluating record to determine whether evidence proffered against the criminal defendant was "overwhelming" in a harmless-error context).

Conversely, the weight of the improperly admitted evidence was significant. In *United States v. Ware*, envelopes were improperly admitted on which narcotics agents had written notations concerning the circumstances of the alleged crimes. 247 F.2d 698 (7th Cir. 1957). The agents testified at trial, and the evidence was deemed

cumulative, nevertheless the appellate court reversed the conviction. *Id.* at 700. It held,

> The jury thus had before it a neat condensation of the government's whole case against the defendant. The government's witnesses in effect accompanied the jury into the jury room. In these circumstances we cannot say that the error did not influence the jury, to the defendant's detriment, or had but very slight effect.

*Id.* at 700-01; *see also United States v. Quinto*, 582 F.2d 224, 235 (2d Cir. 1978); *United States v. Brown*, 451 F.2d 1231, 1234 (5th Cir. 1971); *Sanchez v. United States*, 293 F.2d 260, 269 (8th Cir. 1961).

In *Clark v. City of Los Angeles*, a civil rights case brought under 42 U.S.C. §§ 1983 and 1985(3), the Ninth Circuit Court of Appeals held that the admission into evidence of the plaintiff's diary was reversible error, because the document constituted a written account of practically all of the plaintiff's case against the government. 650 F.2d 1033, 1038 (9th Cir. Cal. 1981).

Here, too the admitted document contained a concise summary of the Government's entire case against the Appellants. The document described the specific unit in the Aureo Diaz housing community where the events transpired, the caliber of gun used to threaten Nesbitt and Rivera, Benjamin snatching a gold chain from Rivera's neck while holding a firearm, and Hodge's presence throughout the

*Sylvester Hodge & Ali Benjamin v. People of the Virgin Islands*
D.C. Crim. App. No. 2007-010 & D.C. Crim. App. No. 2006-019
Memorandum Opinion
Page 18

alleged ordeal. The document was therefore highly prejudicial to the Appellants, and injured their ability to defend themselves. *See, e.g., Ware*, 247 F.2d 698. This wound festered when the court failed to give a curative instruction. *Davis*, 561 F.3d at 167 (failure to give curative instruction compounded prejudice caused by error); *see also Gov't of V.I. v. Mujahid*, 990 F.2d 111, 117 (3d Cir. 1993) (finding that the trial court's failure to give a curative instruction increased the prejudice caused by the error).

The principal characteristic of the "harmless error" doctrine is its "result-orientation". *See U.S. v. Dougherty*, 473 2d. 1113 (D.C. Cir. 1972). Its normal operation is in cases where the challenged error concerns rights given a defendant in order to permit his defense to operate at maximum competence, or to insulate him from effects of suspect evidence. *Id.* Based on the evidence adduced and looking at this trial as a whole, we cannot say, beyond a reasonable doubt, that the improperly admitted evidence surely did not contribute to the jury's guilty verdict, did not affect the Appellants' substantial rights or that they had a fair trial.[14]

---

[14] *See Marshall v. Hendricks*, 307 F.3d 36, 68-74 (3d Cir. 2002)(noting that, "[t]he critical question in assessing constitutional error is to what extent a defendant's rights were violated . . . Such an inquiry requires a focus upon the reliability of the verdict and whether the trial as a whole was rendered unfair").

## V. CONCLUSION

For the foregoing reasons, we vacate the Superior Court's judgment of conviction, and remand this matter for further proceedings, including a new trial.[15] See *Davis*, 561 F.3d at 170 (vacating Superior Court conviction, and remanding for further proceedings, including a new trial).

---

[15] Because we remand this matter, we decline to reach Benjamin's remaining assignments of error.